**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ANDREW JAMES MCGONIGLE,<br><br>Plaintiff,<br><br>v.<br><br>L'ORÉAL USA S/D, INC.,<br><br>Defendant. | C.A. No. 1:26-cv-01507-LMB-WBP |

**DEFENDANT L'ORÉAL USA S/D, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant L'Oréal USA S/D, Inc. ("L'Oréal" or "Defendant"), by and through its undersigned counsel, hereby submits this Memorandum in Support of its Motion to Dismiss Plaintiff Andrew James McGonigle's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

This case arises from a reassigned telephone number. Plaintiff alleges that he obtained the number in August 2024, had no relationship with its prior user, and thereafter received Armani Beauty (a brand of L'Oréal operated under a licensing agreement with Armani) promotional text messages intended for someone else. Based on that reassigned-number, Plaintiff seeks to construct a nationwide class action under the Telephone Consumer Protection Act (the "TCPA") and a Virginia subclass under the Virginia Telephone Privacy Protection Act (the "VTPPA"). The Complaint should be dismissed.

Count I fails as a matter of law because Section 227(c)(5) of the TCPA applies to a person who receives more than one "telephone call" within a twelve-month period. Plainly, it does not authorize a private action based on the receipt of text messages. The Seventh Circuit recently held

that the definition of "telephone call," as used in Section 227(c)(5), does not include "text messages." *Steidinger v. Blackstone Med. Servs., Inc.*, 182 F.4th 532, 536 (7th Cir. 2026). The authorities referenced in Plaintiff's Complaint construe Section 227(b), not the materially narrower private right of action under which he sues in Section 227(c)(5). Because Plaintiff alleges only text messages were sent to his phone number, Count I should be dismissed with prejudice.

Count II also fails because the VTPPA did not begin applying to "text messages" until January 1, 2026. Virginia's presumption against retroactive application does not support holding L'Oréal liable for alleged conduct that occurred in 2024. Plaintiff's VTPPA class allegations are also facially overbroad because he proposes to represent a subclass encompassing text messages sent during the four years preceding the filing of the Complaint. The VTPPA, however, provides a two-year statute of limitations, and the proposed subclass must therefore be limited to the legally permissible period.

Rule 12(b)(6) permits the Court to resolve these threshold legal defects before the parties incur the substantial burden and expense of class discovery. The Court should dismiss Count I with prejudice and strike or limit the time-barred portion of Plaintiff's proposed VTPPA subclass under Count II.

## II. <u>BACKGROUND</u>

Plaintiff alleges that he acquired the telephone number (804) 238-XXXX (the "Number") in August 2024. Compl., Dkt. No. 1, ¶ 13. Based on prior affirmative consent associated with the Number, L'Oréal had previously sent text messages to the Number. Because L'Oréal did not know that the Number had been reassigned to Plaintiff, it sent the first message to the Number after Plaintiff obtained it and registered it on the National Do Not Call (the "DNC") Registry on September 9, 2024. Instead of easily replying "STOP" to inform L'Oréal he no longer wished to

receive text messages, Plaintiff replied, "new one" to L'Oréal on October 3, 2024. L'Oréal immediately sent a text message informing Plaintiff where he could seek additional help, and he could "text STOP to opt out." Plaintiff alleges that he last received text messages from L'Oréal in October 2024. Compl. ¶¶ 28–29. He does not allege that he received any other text messages.

Now, almost two years later, Plaintiff has sued L'Oréal bringing two causes of action (1) a violation of Section 227(c)(5) of the TCPA, and (2) a violation of the VTPPA (Va. Code Ann. §§ 59.1-510 *et seq*.). As fully set forth below, the Court should dismiss Plaintiff's Complaint because he fails to state a claim as to any of his causes of action.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to allow courts to "streamline[] litigation by dispensing with needless discovery and factfinding" and eliminate baseless claims. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). When "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citation modified); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A court must dismiss a complaint that fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To survive a motion to dismiss, a plaintiff must present something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Under this standard, a complaint that presents only "naked assertions devoid of further factual enhancement" does not suffice. *Id.* (citation modified). "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Md. Ct. of Appeals*, 626

F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012) (citation modified). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (citation omitted).

## IV. <u>ARGUMENT</u>

### A. Plaintiff's TCPA Claim Fails Because Section 227(c)(5) Does Not Prohibit Text Messages.

Plaintiff brings his claim under Section 227(c)(5), which provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" may bring a private action for violations of certain regulations. 47 U.S.C. § 227(c)(5). Plaintiff alleges that his phone number was registered on the federal DNC Registry when L'Oréal contacted him. Compl. ¶¶ 16, 30. Further, he asserts that "[a] text message is a "call" as defined by the TCPA." Compl. ¶ 72. However, well-established rules of construction and recent case law demonstrate that Section 227(c)(5) does not cover text messages.

1. <u>The plain language of Section 227(c)(5) does not apply to text messages.</u>

Courts must interpret every statute "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020). Courts begin their interpretation of a statute or regulation with the text. *See, e.g.*, *Cogdell v. Reliance Standard Life Ins. Co.*, 169 F.4th 238, 249 (4th Cir. 2026). If the text is clear, the analysis must end there. *See Green v. Brennan*, 578 U.S. 547, 553 (2016).

As stated above, Section 227(c)(5) creates a private cause of action when a person "has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5)

(emphasis added). The specific regulation under which Plaintiff brings his claim applies to telephone solicitations made to (1) "[a]ny residential telephone subscriber before the hour of 8 a.m. or after 9 p.m." or (2) "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c). Notably, neither Section 227(c)(5) nor Section 64.1200(c) mentions text messages. Instead, the statute uses terms like "telephone call" or "telephone solicitation." This absence is significant because Congress and the FCC could have included the term "text message" or "SMS message" but chose not to.

In fact, the FCC has specified when "calls" include text messages and when "voice calls" and "text messages" should be considered separately. *Compare* 47 C.F.R. § 64.1200(a)(9) ("As used ***in this paragraph (a)(9)***, the term 'call' includes a text message, including a short message service (SMS) call.") (emphasis added), *and* 47 C.F.R. § 64.1200(a)(9)(iii)–(iv) (regulating "voice calls and text messages" related to autodialer provisions in Section 64.1200(a)(1)(iii)), *and* 47 C.F.R. § 64.1200(p) ("A mobile wireless provider must block a text message . . . ."), *with* 47 C.F.R. § 64.1200(d) (separating artificial and prerecorded messages from "calls" for telemarketing purposes). If "call" generally includes text messages or SMS messages, the FCC would have no reason to include a definition of "call" in this circumstance, as it would have no effect. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, THOMPSON/WEST (1st ed. 2012), at 174 ("If possible, every word and every provision is to be given effect (verbacum effectu sunt accipienda)."); *see also Peter v. Nantkwest, Inc.*, 589 U.S. 23, 32 (2019) (finding the appearance of different terms in tandem "indicates that Congress understands the two terms to be distinct and not inclusive of each other").

Congress chose not to include any such language governing text messages in Section 227(c), and the FCC chose not to include any language governing text messages in the implementing regulation, Section 64.1200(c). The FCC is well aware of how to ensure text messages are included in a regulation. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1163 (9th Cir. 2023) (noting the FCC has "distinguished between" voice calls and text messages); *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("[A] negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."). The FCC intentionally omitted text messages or SMS messages from its regulations in Section 64.1200(c); therefore, Section 227(c) does not regulate text messages or SMS messages.

Although the Court need not go further than the clear text of the law, the distinction between Section 227(b) (applying to both calls and texts) and Section 227(c) (applying to calls only) also aligns with public policy considerations behind the enactment of the TCPA. "Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 (the "2003 FCC Order")*, 18 F.C.C. Rcd. 14014, ¶ 165 (2003), https://docs.fcc.gov/public/attachments/FCC-03-153A1.pdf. Section 227(b) was enacted to address the uses of "automated telephone equipment," and implementing regulations demonstrate this heightened concern for automated and prerecorded calls. *See* 42 C.F.R. § 64.1200(a)(1) ("[U]sing an automatic telephone dialing system or an artificial or prerecorded voice[.]"); (2) ("[U]sing an automatic telephone dialing system or an artificial or prerecorded voice."); (3) ("[U]sing an artificial or prerecorded voice[.]"); and (5) ("Use an automatic telephone dialing system . . . ."). Because Section 227(c)(5) does not require calls to be "automatic" or "artificial,"

it follow that the provision would not apply to text messages. Therefore, the policy considerations underlying the TCPA and its implementing regulations suggest that Section 227(c)(5) and its implementing regulations do not apply to text messages.

2. Recent case law supports the conclusion that Section 227(c)(5) does not apply to text messages.

A recent series of district court decisions has held that text messages are not telephone calls covered by the private right of action in Section 227(c)(5) or by the regulation under which Plaintiff brings his claim, 47 C.F.R. § 64.1200(c). *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025), *aff'd*, *Steindinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026) (dismissing TCPA causes of action alleging receipt of text messages to phone numbers on the DNC list because "under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages"); *Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("The statutory text here is clear, and a text message is not a telephone call.") (internal quotations and emphasis omitted); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-cv-00846, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same).

And most recently, the Seventh Circuit held that text messages were not "telephone calls" within the meaning of Section 227(c)(5). *Steidinger*, 182 F.4th at 536–37.[1] The court anchored its analysis in the ordinary public meaning of "telephone call" at the time the TCPA was enacted in 1991 and concluded that a "telephone call" referred to a "communication via sound." *Steidinger*, 182 F.4th at 536-37. The court noted the TCPA's structure was meaningful because Section 227(c)(5) only created a private right of action for "telephone calls," whereas other

[1] The Seventh Circuit squarely addressed whether text messages were included in the definition of "telephone calls" under Section 227(c)(5). The Ninth Circuit held earlier this year that text messages are "calls" under Section 227(b), not Section 227(c)(5). *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. Jan. 13, 2026).

subsections use the broader term "telephone solicitation," which includes a "telephone call and message." *Id.* at 536–37. In reaching its decision, the Seventh Circuit did not defer to the FCC's interpretation and instead conducted its own statutory analysis, concluding that interpretations of other provisions did not control the meaning of Section 227(c)(5). *Id.* at 538–39 (citing *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025)). Finally, the court found Congress's failure to make comparable amendments to Section 227(c)(5) to address text messages unpersuasive because of the difficulties in interpreting Congressional inaction. *Id.* at 539.

Plaintiff argues that *Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020) and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) support the proposition that "a text message is a call as defined by the TCPA." Compl. ¶ 72 (internal quotation marks omitted).[2] However, these cases are distinguishable from the above-mentioned cases for two independent reasons. First, *Satterfield*, did not address the interpretation of "telephone call" within the meaning of Section 227(c)(5). Instead, the Ninth Circuit interpreted the word "call" within the meaning of Section 227(b)(1)(A). *Satterfield*, 569 F.3d at 952. Second, *Duran* and *Satterfield* were decided before the Supreme Court overruled *Chevron* deference in *Loper Bright v. Raimondo*, 603 U.S. 369 (2024), and before its decision in *McKesson Corp.*, 606 U.S. at 168, which held that district courts are not bound by FCC statutory interpretations in TCPA enforcement proceedings.

Given the statutory text, weight of recent authority, and the lack of controlling precedent, neither the private right of action nor the relevant regulation covers text messages, and Plaintiff's claim fails as a matter of law.

---

[2] Notably, the Seventh Circuit did not discuss these cases as supporting plaintiffs "reading of § 227(c)(5)." *Steidinger*, 182 F.4th at 536.

**B. Plaintiff's VTPPA Claim Cannot Be Sustained.**

Plaintiff brings a second cause of action under the VTPPA, which prohibits any person from making or causing to be made an unsolicited telephonic or text-based solicitation to a Virginia resident without prior express consent. *See* Va. Code Ann. § 59.1-514. However, the Court should dismiss Count II of Plaintiff's Complaint because the VTPPA does not apply to the alleged conduct, and the proposed VTPPA Sub-class is overbroad under the statute of limitations.

1. <u>The VTPPA does not apply to the alleged conduct.</u>

Plaintiff attempts to bring a claim against L'Oréal alleging that he received unsolicited text messages from L'Oréal without his prior express consent in September and October 2024. Compl. ¶¶ 28, 80. In fact, Plaintiff has not alleged that he received text messages from L'Oréal since 2024. The Complaint states that the statute defines "a telephone solicitation call" to include "text messages." Compl. ¶ 81. However, the VTPPA was only recently amended to include text messages, ***effective January 1, 2026***. *Compare* Va. Code Ann. § 59.1-510 (2026) ("'Telephone solicitation' [call] means (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth **or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth** . . . .") (emphasis added), *with* VA LEGIS 607 (2020), 2020 Virginia Laws Ch. 607 (S.B. 812) ("Telephone solicitation call" means (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, or to or wireless telephone with a Virginia area code, or to a wireless telephone registered to any natural person who is a resident of the Commonwealth).

Federal courts analyzing the retroactivity of recently amended Virginia laws must apply the rules of the Virginia state courts. *See Markham v. City of Newport News*, 292 F.2d 711, 718 (4th Cir. 1961) ("[A] federal court exercising its diversity jurisdiction to adjudicate rights created by the state sits as another court of that state . . . [and] should reach the same result as the state courts would reach in deciding the identical issue."). It is beyond dispute that "[t]he general rule is that statutes are prospective in the absence of an express provision by the legislature," to the contrary. *Taylor v. Commonwealth*, 44 Va. App. 179, 184, 604 S.E.2d 103 (2004); *see also Commonwealth v. Southerly*, No. CR21F00217-00, 2021 WL 5766748, at *2 (Va. Cir. Ct. Oct. 12, 2021) ("The legal standard on the general retroactivity of statutes enacted by our state legislature is clear and settled. Retroactivity is highly disfavored . . . .") (citation omitted). This strong presumption against retroactivity also applies to amended acts and has been further codified by statute: "changes enacted to a section of the Code of Virginia or an act of the General Assembly are in addition to the existing substantive provisions in that section or act, and are effective prospectively unless the bill expressly provides that such changes are effective retroactively on a specified date." Va. Code Ann. § 1-238.

Notably, the current version of Virginia Code Section 59.1-510 contains no express provision indicating that any changes that became effective on January 1, 2026 would apply retroactively. *See United States v. Johnson*, No. 3:21CR29, 2022 WL 2373700, at *10 (E.D. Va. June 30, 2022), *aff'd sub nom.*, *United States v. Miffin*, No. 23-4040, 2024 WL 4888978 (4th Cir. Aug. 23, 2024) (refusing to retroactively apply Virginia Code Section 46.2-1003, effective on March 1, 2021, to conduct that occurred on September 1, 2020 when the statute contained no express provision of retroactive application). The Virginia General Assembly's decision not to include this provision is telling because a "court should not second guess the legislature on matters

that fall squarely within [the legislature's] enumerated powers, including, . . . public policy choices," and the Court must not do so here. *Commonwealth v. Allen*, No. CR-20-302-01, 108 Va. Cir. 193, at *5 (June 10, 2021) (citation omitted).

Virginia law recognizes an exception to the general presumption against retroactivity: statutory changes that are "procedural" rather than "substantive" can apply retroactively. *See* Va. Code § 1-239. A change is considered "substantive" when it concerns the "creation of duties, rights, and obligations," whereas a "procedural" change "prescribes methods of obtaining redress or enforcement of rights." *Shiflet v. Eller*, 228 Va. 115, 120, 319 S.E.2d 750, 754 (1984). Virginia courts treat the creation of a private right of action, including by amendment, as a substantive change. *See Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 314, 787 S.E.2d 855, 857 (2016). The distinction between a "right of action" (a legal right to enforce a cause of action) and a "cause of action" (the set of operative facts that allows a party to assert a claim) is important because the latter arises from a preexisting legal right. *Id.* at 314–15.

Here, it is clear that the amendment to Virginia Code Section 59.1-510 is substantive because it creates a private right of action for individuals who receive unsolicited text messages. At the time Plaintiff's cause of action accrued in September and October 2024, he did not possess the right of action to sue L'Oréal because the VTPPA did not apply to text messages. Any retroactive application of the January 2026 amendments would disturb the existing rights of regulated entities, which would not have been on notice that they could be held liable for past conduct. Plaintiff's inability to sue L'Oréal at the time he received the text messages does not permit him to use the VTPPA to sue now that it includes text messages.

Because the VTPPA contains no clear expression of retroactive application and the amendments to Section 59.1-510 are substantive in nature, Plaintiff's VTPPA action must be dismissed.

2. Plaintiff's proposed VTPPA class is overbroad under the statute of limitations.

In the event the Court departs from the long-settled presumption against retroactive application, Plaintiff's proposed VTPPA subclass must still be narrowed because it includes time-barred claims. Plaintiff purports to assert a claim under the VTPPA on behalf of a putative class of individuals with telephone numbers bearing Virginia area code numbers who allegedly received text messages from L'Oréal when their numbers were registered on the DNC Registry as least thirty (30) days before text messages were delivered. Compl. ¶ 43. Plaintiff defines the proposed VTPPA subclass to include all text messages delivered "within four years preceding the filing of this Complaint." *Id.* The proposed VTPPA sub-class is overbroad .

Virginia Code Section 8.01-243(A) provides that "[u]nless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues." Virginia Code Section 8.01-228 then clarifies that "the term 'personal action' shall include an action wherein a judgment for money is sought, whether for damages to person or property." Because the VTPPA creates a private right of action for damages but does not expressly prescribe a separate limitations period, the two-year statute of limitations under Section 8.01-243(A) applies to VTPPA claims.[3] *See Bryant v. King's Creek Plantation, L.L.C.*, No. 20-cv-00061, 2020 WL 6876292, at *1 (E.D. Va. June 22, 2020) (defining the VTPPA Class as "[a]ll natural persons in Virginia from two years

[3] Virginia Code Section 8.01-248 further explains that "[e]very personal action accruing on or after July 1, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued."

prior to the filing of the initial Complaint" who received a call from Defendants); *see also Cavey v. Homebuyers*, 542 F. Supp. 3d 418, 422 (E.D. Va. 2021) (defining the Virginia Do Not Call Registry Class as "[a]ll natural persons residing in Virginia and all natural persons with cellular telephones with a Virginia area code, in the period from two years prior to commencement of this litigation" who received one or more text messages from defendant).

Accordingly, any VTPPA claim based on calls occurring more than two years before the filing of the Complaint is untimely. Plaintiff's proposed VTPPA subclass, which purports to cover calls made "within four years preceding the filing of this Complaint," must therefore be stricken or limited.

## V. CONCLUSION

For the above-stated reasons, the Court should dismiss Plaintiff's Complaint for failure to state a claim.

Dated: August 21, 2026

Respectfully submitted,

*/s/ Rachel P. Raphael*
Rachel P. Raphael (VSB 85522)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202.739.3000
Facsimile: 202.739.3001

Ezra D. Church (*pro hac vice forthcoming*)
2222 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001

*Attorneys for Defendant L'Oréal USA S/D, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing was filed with the Clerk of Court using the CM/ECF system, which will transmit a true and correct copy of the same to all Counsel of Record.

/s/ *Rachel P. Raphael*
Rachel P. Raphael